UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SANDI MARIE STATEN, | Case No. 1:22-cv-00260 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge James E. Grimes Jr. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

# OPINION AND ORDER

Plaintiff Sandi Marie Staten applied for social security disability benefits. An administrative law judge determined she was not disabled and denied her application. On appeal to federal court, the Magistrate Judge recommended that the Court affirm the agency's decision. (ECF No. 15.) Plaintiff objects to that recommendation. (ECF No. 16.) For the reasons that follow, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the Report and Recommendation, and **AFFIRMS** the denial of Plaintiff's application.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2017, Ms. Staten applied for disability benefits. (*See* ECF No. 5, PageID #389–96.) She claimed that she had experienced rheumatoid arthritis and fibromyalgia since January 15, 2016. (*Id.*, PageID #390.) The Commissioner denied Ms. Staten's application initially and on reconsideration, determining that her condition was not severe enough to prevent her from working. (*Id.*, PageID #189–91

& #194–200.) Following a hearing, an administrative law judge denied her claim too. (*Id.*, PageID #167–78.) Later, the Appeals Council vacated the ALJ's decision and remanded the case for further consideration of Ms. Staten's ability to perform past relevant work. (*Id.*, PageID #183–86.) After another hearing, which included testimony from a vocational expert, the ALJ denied Ms. Staten's claim. (*Id.*, PageID #36–53.) Again, she appealed. (*See id.*, PageID #22–24.) This time, the Appeals Council declined further review, rendering the ALJ's decision final. (*Id.*)

### A.  Medical Evidence

In June 2016, Ms. Staten sought emergency medical help for abdominal and back pain and degenerative joint disease of her lumbar spine. (*Id.*, PageID #473–78.)

Dr. Isam Diab, M.D., a rheumatologist, provided subsequent treatment. (*See, e.g., id.*, PageID #496.) From 2017 to 2020, he administered Remicade infusions to treat Ms. Staten's rheumatoid arthritis and fibromyalgia. (*Id.*, PageID #592, #650, #718 & #778.) During that time, Dr. Diab noted varying symptoms, including edema in Ms. Staten's legs; mild to modest (and sometimes no) synovitis (inflammation of the membrane lining the joints) in her hands, ankles, wrists, and feet; carpal tunnel syndrome on her right side; scattered fibromyalgia tender points; restricted rotation and mild tenderness in her spine; shoulder inflammation; and a reduced range of motion in her shoulders and hips. (*See, e.g., id.*, PageID #490, #568 & #591.) To treat her edema, Dr. Diab recommended that Ms. Staten wear knee-high medium compression stockings. (*See, e.g., id.*, PageID #717, #746 & #792.)

In September and October 2017, representatives of two State agencies evaluated Ms. Staten. (*Id.*, PageID #133–46 & #397.) First, Pauline Hollingsworth

met with Ms. Staten to discuss her mental and physical health. (*See id.*, PageID #397.) Ms. Staten reported that she could stand or sit without elevating her legs for 20 minutes at a time. (*Id.*) Further, she indicated that her hands were swollen and that depression impaired her concentration. (*Id.*) Later, Dr. Elizabeth Das, M.D. evaluated Ms. Staten's medical records to help assess her residual functional capacity. (*Id.*, PageID #133–46.) A record from Dr. Karla Delcour, Ph.D, noted that Ms. Staten's mental ability to respond to changes in a work setting was moderately limited. (*Id.*, PageID #143–44.) Physically, Dr. Das opined that Ms. Staten could perform a job requiring her to stand, sit, or walk for six hours per workday; frequently carry 10 pounds and perform handling and fingering; and occasionally balance, stoop, kneel, crouch, crawl, climb ramps/stairs, reach over her head, and lift or carry 20 pounds. (*Id.*, PageID #140–42.) However, Ms. Staten could never climb ladders, ropes, or scaffolds and needed to avoid jobs possessing even moderate exposure to hazards. (*Id.*, PageID #141–42.)

Around the same time, Dr. Katherine Alouani, Psy.D. performed a psychiatric evaluation. (*Id.*, PageID #508–15.) Dr. Alouani diagnosed Ms. Staten with major depressive disorder but opined that outpatient mental health services could improve her condition. (*Id.*, PageID #512–14.)

Despite ongoing treatment, Ms. Staten experienced frequent back pain and tenderness. (*Id.*, PageID #565 & #568.) So, Dr. Diab referred her to Dr. Fares Raslan, M.D., a pain management specialist. (*Id.*, PageID #581–89.) Dr. Raslan noted that Ms. Staten's lower back pain radiated along her right thigh, leg, and foot, though she

had normal gait with a mild limp. (*Id.*, PageID #586–87.) Further, her pain worsened under many conditions. (*Id.*) Dr. Raslan diagnosed Ms. Staten with L4/5 and L5/S1 spondylosis (abnormal neck wear), degenerative disc disease, rheumatoid arthritis, and fibromyalgia. (*Id.*, PageID #588.)

In January and February 2018, two more State medical consultants evaluated Ms. Staten. (*Id.*, PageID #156–60.) Dr. Abraham Mikalov, M.D. performed another physical residual functional capacity assessment. (*Id.*, PageID #156–59.) His evaluation was similar to Dr. Das's, but he opined that Ms. Staten could stand or walk for four hours in an eight-hour day, not six. (*Compare id.*, PageID #140–42, *with id.*, PageID #156–59.) Dr. Courtney Zeune, Psy.D. assessed Ms. Staten's mental residual functional capacity. (*Id.*, PageID #159–60.) She opined that Ms. Staten's symptoms had worsened since her last psychiatric evaluation and, therefore, a limitation in her residual functional capacity for stress tolerance was reasonable. (*Id.*, PageID #160.)

For the next eight months, Dr. Raslan continued to treat Ms. Staten. (*See id.*, PageID #657–711.) Overall, her condition seemed to improve. (*Id.*, PageID #677, #685, & #701.) For example, although Dr. Raslan observed that Ms. Staten had moderate muscle tenderness and a decreased range of motion, he also observed no sensory-motor deficit, normal strength, and normal reflexes. (*Id.*, PageID #662–63.)

In January 2019, Dr. Diab completed a medical-source statement for Ms. Staten. (*Id.*, PageID #712–16.) It contained several findings. First, Dr. Diab opined that Ms. Staten could sit for 20 minutes and stand for 30 minutes at a time.

4

(*Id.*, PageID #714.) However, she could not do either for more than two hours in an eight-hour workday. (*Id.*) Second, Ms. Staten could use her hands and fingers to twist objects and for manipulative tasks for 5% to 6% of the workday, use her arms to reach overhead and in front of her body for 15% to 20% of the workday, and rarely lift less than 10 pounds. (*Id.*, PageID #715.) Third, Ms. Staten would (1) be off-task for a quarter or more of the workday; (2) need to elevate her legs for half of the workday; (3) sometimes need unscheduled breaks; and (4) be incapable of even low-stress work. (*Id.*, PageID #714–16.) Finally, Ms. Staten would likely miss three days of work per month due to her impairments. (*Id.*, PageID #716.)

Around a year and a half later, Ms. Staten followed up with Dr. Diab. (*Id.*, PageID #754–61.) In May 2020, she reported that some of her symptoms were improving. (*See id.*, PageID #746–48.) X-rays taken in August showed two reductions of space between the spinal discs in her lower back, degenerative disc disease, mild spondylosis in her L4/5 and L5/S1, and mild scoliosis. (*Id.*, PageID #863–65.)

In October 2020, Ms. Staten received treatment for head lacerations, headaches, syncope, nausea, and vomiting. (*Id.*, PageID #1040 & #1049.) During that visit, she was diagnosed with Arnold-Chiari malformation type I. (*Id.*, PageID #1034.) Doctors reported that Ms. Staten had full range of motion in her neck but general muscular tenderness and mild weakness in her left-hand grip. (*Id.*, PageID #1046.)

In December 2020, Dr. Diab completed a second medical-source statement. (*Id.*, PageID #1080–84.) It was nearly identical to his first. (*Compare id.*, PageID #712–16, *with id.*, PageID #1080–84.)

### B. Administrative Law Judge's Ruling

In June 2019, the ALJ held a hearing with testimony from Ms. Staten and a vocational expert. (*See id.*, PageID #92.) One month later, the ALJ denied Plaintiff's claim, determining that she was not disabled, as defined in the Social Security Act. (*Id.*, PageID #167–78.) On review, the Appeals Council vacated that decision and remanded Ms. Staten's case. (*Id.*, PageID #183–86.) It instructed the ALJ to reconsider, using additional vocational expert evidence, whether Ms. Staten had past relevant work that she could perform. (*Id.*, PageID #185–86.)

In January 2021, the ALJ held a second hearing. (*See id.*, PageID #60.) Ms. Staten and a new vocational expert witness testified. (*Id.*, PageID #62–91.) Since the initial hearing, Ms. Staten explained that her lower back pain had worsened. (*Id.*, PageID #69.) She also reported fatigue, nausea, and swelling or stiffness in her calves and hands. (*Id.*, PageID #69–71 & #77–79.) Mentally, she was depressed and had trouble concentrating. (*Id.*, PageID #69 & #79–80.) But these conditions did not prevent her from caring for her adult son, who has special needs, as needed. (*Id.*, PageID #71–77.)

After considering the evidence and conducting the five-step analysis under Section 404.1520(a), the ALJ determined that Ms. Staten was not disabled and denied her application. (*Id.*, PageID #36–53.) At step one, the ALJ found that Ms. Staten had not engaged in substantial gainful activity since her alleged disability onset date.

6

(*Id.*, PageID #39.) At step two, the ALJ found that Ms. Staten had five severe impairments: rheumatoid arthritis causing subacromial bursitis, fibromyalgia, degenerative disc disease, obesity, and depression. (*Id.*) Under step three, however, the ALJ found that none of those impairments, individually or combined, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*, PageID #39–42.)

Ms. Staten's application failed at steps four and five. As to the former, the ALJ found that Ms. Staten had the residual functional capacity to perform light work and, accordingly, could perform her past relevant work as a gas station cashier. (*Id.*, PageID #42–52.) In making that finding, the ALJ "considered the medical opinion(s) and prior administrative medical findings in accordance with . . . 20 CFR 404.1520c." (*Id.*, PageID #42.) Specifically, it found five medical opinions—those of Zeune and Drs. Das, Mikalov, Delcour, and Alouani—at least partially persuasive, and Dr. Diab's unpersuasive. (*Id.*, PageID #49–51.) In the alternative, at step five, the ALJ found that Ms. Staten could perform other jobs that exist in significant numbers in the national economy. (*Id.*, PageID #52–53.) For either of these reasons, Ms. Staten was not disabled. (*Id.*, PageID #53.)

Plaintiff appealed, but the Appeals Council declined further review, rendering the ALJ's decision final. (*Id.*, PageID #22–24.)

C. **The Report and Recommendation**

In February 2022, Plaintiff filed a complaint in federal court challenging the denial of her application. (ECF No. 1.) Her brief on the merits argued that the ALJ committed three errors. (ECF No. 9, PageID #1106–18.) On December 14, 2022, the

7

Magistrate Judge addressed each alleged error and recommended that the Court affirm the Commissioner's decision. (ECF No. 15.)

*First*, Plaintiff argued that the ALJ failed to comply with the Appeals Council's order of remand. (ECF No. 9, PageID #1106–07.) She contended that the ALJ wrongly considered a past job that she performed over 15 years ago. (*Id.*) The Magistrate Judge rejected that argument on two grounds. First, the Magistrate Judge found that federal courts lack jurisdiction to consider compliance with an order of remand. (ECF No. 15, PageID #1178–80.) Second, assuming jurisdiction exists, Plaintiff's argument failed on its merits. (*Id.*, PageID #1180–82.) The ALJ adequately considered Ms. Staten's past relevant work as a gas station cashier, which fell within the 15-year limitation period, and, in any event, its consideration was harmless. (*Id.*)

*Second*, Plaintiff argued that the ALJ failed to assess Dr. Diab's medical opinions consistent with 20 C.F.R. § 404.1520c. (ECF No. 9, PageID #1107–14.) In Plaintiff's view, the ALJ should have found Dr. Diab's opinions persuasive because he provided sufficient support for his limitations, consistent with the factual record. (*Id.*, PageID #1109–13.) The Magistrate Judge disagreed. (ECF No. 15, PageID #1176–77.) He found that the ALJ provided several examples of inconsistency and insufficient evidence. (*Id.*) Additionally, the ALJ observed that Dr. Diab's medical source statements were nearly identical, even though separated by two years. (*Id.*, PageID #1177.) Given this record, the Magistrate Judge found

8

that substantial evidence supports the ALJ's evaluation of Dr. Diab's opinion evidence. (*Id.*)

*Third*, Plaintiff argued that the ALJ failed to comply with Social Security Ruling 16-3p in analyzing her symptoms and pain. (ECF No. 9, PageID #1114–18.) The Magistrate Judge found that Plaintiff did not preserve this argument. (ECF No. 15, PageID #1183.) But if she did, the ALJ—who need not accept Ms. Staten's subjective complaints—sufficiently considered her statements and found that they did not accurately portray her conditions' intensity, persistence, or limitations. (*Id.*, PageID #1182–85.)

### D.  Plaintiff's Objection

Plaintiff objects to the Magistrate Judge's report and recommendation. (ECF No. 16.) Specifically, she challenges the determination that substantial evidence supports the ALJ's finding that Dr. Diab's opinions are unpersuasive. (*Id.*, PageID #1187.) In her view, such a finding is inconsistent with the factual record and cases interpreting 20 C.F.R. § 404.1520c. (*Id.*)

## ANALYSIS

The Court reviews de novo the portions of a magistrate judge's report and recommendation to which specific objections were made. 28 U.S.C. § 636(b)(1)(C); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). "Objections must be specific, not general" and should direct the Court's attention to a particular dispute. *Howard v. Secretary of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). "De novo review requires the Court to re-examine the relevant evidence a magistrate judge reviewed to determine whether to accept, reject, or modify the report and

9

recommendation." *Scott v. Saul*, No. 1:19-cv-2393, 2021 WL 9169936, at *5 (N.D. Ohio May 14, 2021) (citing 28 U.S.C. § 636(b)).

Where a party objects, the review is limited to determining whether substantial evidence in the record supports the Commissioner's decision and to reviewing any legal errors de novo. *Wright v. Massanari*, 321 F.3d 611, 614–15 (6th Cir. 2003). "Substantial evidence" is more than a scintilla, but less than a preponderance. *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Id.* If substantial evidence supports the Commissioner's findings, then the Court accepts them as conclusive, even if it would have reached a different outcome on the same facts. 42 U.S.C. § 405(g).

## I. Dr. Diab's Medical Opinions

Plaintiff argues that the ALJ erred in finding Dr. Diab's medical opinions unpersuasive. (ECF No. 16, PageID #1187.) Had the ALJ found otherwise, she might have incorporated Dr. Diab's limitations in Ms. Staten's residual functional capacity. (ECF No. 16, PageID #1187.) To determine the persuasiveness of a medical opinion, an ALJ considers several factors. 20 C.F.R. § 404.1520c(a); *Kreilach v. Commissioner of Soc. Sec.*, No. 1:20-cv-00875, 2022 WL 3347334, at *8 (N.D. Ohio Aug. 15, 2022). The most important factors, which the ALJ *must* consider and articulate, are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Supportability assesses how much objective medical evidence and supporting explanations a medical source presents to support its opinion. *See id.* § 404.1520c(c)(1). Consistency considers whether the opinion aligns with other medical and nonmedical sources. *Id.*

§ 404.1520c(c)(2). The ALJ may consider additional factors, such as the medical source's specialization and relationship with the claimant. *Id*. § 404.1520c(c)(3–5).

In her ruling, the ALJ found that Dr. Diab's medical opinions were "not fully persuasive for several reasons." (ECF No. 5, PageID #50.) Most, if not all, were directed toward supportability and consistency. Indeed, the ALJ plainly stated that Dr. Diab's opinions were not persuasive because they "are not well-explained, and they are generally not supported by or consistent with the record." (*Id.*, PageID #51.) Because the Court finds substantial evidence that Dr. Diab's opinions are internally unsupported and externally inconsistent, the ALJ did not err in finding his opinions unpersuasive.

*Internally Unsupported.* Several examples show that Dr. Diab's opinions lack support. In fact, the ALJ's ruling outlined a few. (*Id.*, PageID #50–51; *see also* ECF No. 15, PageID #1176–77.) To begin, while Dr. Diab wrote on both forms, his medical-source statements do not cite, even once, his treatment notes. (*See* ECF No. 5, PageID #712–16 & #1080–84.) In any event, his treatment notes often contradict his opinions. As one example, Dr. Diab opined that Ms. Staten could use her hands and fingers for twisting objects and manipulative tasks for 5% to 6% of the workday. (*Id.*, PageID #715 & #1082.) However, Ms. Staten's records generally indicate, at worst, modest synovitis and some tenderness in her hands. (*See, e.g., id.*, PageID #490, #568 & #591.) As another, Dr. Diab opined that Ms. Staten would need to elevate her legs for half of the workday. (*Id.*, PageID #715 & #1082.) Before then, Dr. Diab had never recommended doing so for such extended periods. (*See, e.g., id.*, PageID #717, #746

11

& #792.) Instead, he consistently advised Ms. Staten to wear knee-high medium compression stockings to treat her edema. (*Id.*) Finally. Dr. Diab opined that Ms. Staten could rarely lift less than 10 pounds (*id.*, PageID #715 & #1082), yet she consistently denied muscle weakness (*see, e.g.*, PageID #719, #764, & #830). And the record contains more examples.

*Externally Inconsistent.* Additionally, the record is replete with instances where Dr. Diab's opinions conflict with other medical authorities. The ALJ explained two. (*Id.*, PageID #50.) Although Dr. Diab opined that Ms. Staten could rarely lift less than 10 pounds (*id.*, PageID #715 & #1082), Dr. Raslan opined that Ms. Staten presented with full strength (*id.*, PageID #663; *see also id.*, PageID #50). Another instance of inconsistency involves Dr. Diab's opinions on Ms. Staten's ability to be on her feet. He opined that she could stand or walk for up to two hours. (*Id.*, PageID #714 & #1081.) But Dr. Raslan's notes indicate that Ms. Staten had normal gait with a mild limp, which does not align with such a limitation. (*Id.*, PageID #587; *see also id.*, PageID #50.)

Although the ALJ did not expressly compare them, some of Dr. Diab's opinions are also inconsistent with those of Drs. Das and Mikalov. (*See id.*, PageID #48–50.) First, both concluded that Ms. Staten could perform a job that requires lifting or carrying 10 pounds frequently and 20 pounds occasionally. (*Id.*, PageID #140 & #157.) Second, Dr. Das opined that Ms. Staten could stand or walk for six hours. (*Id.*, PageID #140.) And Dr. Mikalov opined that Ms. Staten could do those same tasks for four. (*Id.*, PageID #157.)

12

Perhaps the best example of an inconsistency comes from Dr. Diab's own medical evaluations, which were nearly identical. (*Compare id.*, PageID #712–16, *with id.*, PageID #1080–84.) Because he created the two statements two years apart (*id.*), their nearly identical wording undermines his opinions' persuasiveness (*see id.*, PageID #746–48 (noting that Ms. Staten's symptoms improved)).

\* \* \*

Individually, each of these points undermine the persuasiveness of Dr. Diab's medical opinions. Combined, they provide more than substantial evidence to support the ALJ's determination.

## II. Plaintiff's Counterarguments

In her objection, Plaintiff raises two main counterarguments. (ECF No. 16, PageID #1187.) First, contrary to the ALJ's determination, she argues that Dr. Diab's opinions were supported by and consistent with medical evidence in the record. (*Id.*) For support, Plaintiff cites pages 11 through 13 of her brief on the merits. (*Id.*) Those pages recount Dr. Diab's observations of Ms. Staten's symptoms and testing results, including notes of severe rheumatoid arthritis, stiffness and pain, fatigue, bilateral carpal tunnel syndrome, and bilateral leg edema. (ECF No. 9, PageID #1109–11.) Plaintiff effectively requests the Court to reweigh the evidence the ALJ considered regarding supportability. In the current procedural posture, however, the Court only reviews whether a reasonable person could have reached the same conclusion as the ALJ. *Jones v. Commissioner of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). As described above, the record provides a reasonable person with adequate bases, given the examples undermining

13

supportability, to question the persuasiveness of Dr. Diab's opinions, notwithstanding some possible grounds for supportability.

Second, Plaintiff argues that the ALJ's findings are "legally inconsistent with the cases interpreting 20 CFR § 404.1520c." (ECF No. 16, PageID #1187.) It is unclear what cases Plaintiff references. Her objection cites only one—*Lester v. Saul*, No. 5:20-cv-1364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020). (*Id.*) And pages 11 through 13 of her merits brief cite only *Russ v. Commissioner of Social Security*, No. 1:20-cv-1838, 2021 WL 3709916, at *9 (N.D. Ohio Aug. 20, 2021). (ECF No. 9, PageID #1111.) Assuming these are the cases to which Plaintiff refers, she cites them for the proposition that an ALJ must provide a coherent explanation for her reasoning. (*Id.*; ECF No. 16, PageID #1187.) In this case, the ALJ did. She sufficiently explained her determination by citing several examples in the record that show Dr. Diab's opinions were not supported or consistent. (*See* ECF No. 5, PageID #50–51.)

Accordingly, none of Plaintiff's counterarguments alter the Court's conclusion.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiff's objections (ECF No. 16), **ADOPTS** the Magistrate Judge's report and recommendation, and **AFFIRMS** the Commissioner's denial of benefits.

**SO ORDERED.**

14

Dated: March 20, 2023

                                    *J. Philip Calabrese* (signature)
                                    _____
                                    J. Philip Calabrese
                                    United States District Judge
                                    Northern District of Ohio